## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**BRADEN HICKERT,**

     **Plaintiff,**

     v.                         **CASE NO. 24-3229-JWL**

**KANSAS DEPARTMENT OF
CORRECTIONS, et al.,**

     **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff, Braden Hickert, who is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF"), brings this pro se civil rights case under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis. The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate Kansas Department of Corrections ("KDOC") officials. Plaintiff is also ordered to show good cause why his claims against Defendants KDOC, Centurion, Zmuda, and Howes, should not be dismissed.

**I. Nature of the Matter before the Court**

Plaintiff alleges that he is deaf or significantly hearing impaired. (Doc. 1, at 2; Doc. 1–1, at 1.) Plaintiff communicates almost exclusively through American Sign Language. (Doc. 1–1, at 4.) He alleges that Centurion and the KDOC failed to train staff regarding offenders with hearing impairments, were deliberately indifferent to his medical needs, and failed to comply with the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").[1] (Doc. 1, at 3.) Plaintiff also alleges an equal protection violation. *Id*. at 4. Plaintiff alleges that

---

[1] Plaintiff also references RLUIPA and free speech in his complaint that is attached to his Complaint on the Court-approved form. (Doc. 1–1, at 2.) Plaintiff does not elaborate on these claims or mention them in his Complaint at Doc. 1.

Centurion denied him hearing aids, despite an outside audiologist's recommendation to the contrary.  (Doc. 1–1, at 2.)

Plaintiff alleges that his claims center around five areas:  1) inadequate access to telecommunications; 2) inadequate access to auxiliary aids and services which consequently impede his religious exercise under the First Amendment; 3) inadequate visual notification of prison alerts and announcements; 4) ineffective communication with family and counsel and ineffective communication during parole and disciplinary proceedings; and 5) unequal treatment of deaf and hearing impaired inmates by prison officers.  *Id*. at 2; Doc. 1–1, at 4.

Plaintiff names as defendants:  the KDOC; Jeff Zmuda, KDOC Secretary of Corrections; Jesse Howes, LCF Warden; Centurion, LLC; John Doe (1), Deputy Warden; John Doe (2), Deputy Director; John Doe (3), Chief Deputy Director; Madison Gonseth, Public Information Officer; Kevin Goodman, Sergeant/Correctional Officer 1; Tracy Gunderson, Health Services Administrator; and Stacy Heald, Director of Nursing.  For relief, Plaintiff seeks compensatory and punitive damages, a declaratory judgment, and an order compelling Defendants to provide Plaintiff with appropriate reasonable accommodations and compelling Defendants to enact policies ensuring hearing impaired inmates receive reasonable accommodations.  *Id*. at 5.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New*

*Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)(citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

### 1. Eighth Amendment

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at

104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted).   A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

Plaintiff must also satisfy the subjective prong.   The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added).   An apparent disagreement over course of treatment, however, does not rise to the level of a constitutional violation. *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010).   "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'"   *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id*. at 1139.   "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises."   *Id*. (citations omitted).   Under the deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability."   *Id*.   "Instead, a court may need to

determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id.* (citations omitted).

### 2.  RA and ADA

The Rehabilitation Act states, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .." 29 U.S.C. § 794(a).

The ADA prohibits discrimination by government entities on the basis of disability.  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  State prisons are within Title II's definition of "public entities." *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998).  Moreover, "[m]odern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,'" and "[t]he text of the ADA provides no basis for distinguishing these programs, services, and activities from those provided by public entities that are not prisons." *Williams v. Colo. Dep't of Corr.*, 2022 WL 3681255, at *3 (10th Cir. 2022) (quoting *Yeskey*, 524 U.S. at 210).  "[T]he answer is the same for the corresponding provision of the Rehabilitation Act (29 U.S.C. § 794(a))." *Id.* (citing *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1312 (10th Cir. 2021) ("We typically evaluate claims identically under the ADA and Rehabilitation Act.")).

"To state a claim under Title II of the ADA, a plaintiff must allege: (1) he is 'a qualified individual with a disability'; (2) he 'was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated

against by the public entity'; and (3) 'such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.'" *Crane,* 15 F.4th at 1312 (quoting *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016)). The inability to prove any one of these elements precludes an ADA claim. *Id.* "Courts have recognized three ways to establish a discrimination claim: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *J.V.*, 813 F.3d at 1295.

### 3. First Amendment

Plaintiff alleges violations of his right to freely exercise his religion. "To state a valid constitutional claim, a prisoner must allege facts showing that officials substantially burdened a sincerely held religious belief." *Williams v. Hansen*, 5 F.4th 1129, 1133 (10th Cir. 2021) (citing *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)). "If a substantial burden is shown, officials must identify a legitimate penological interest." *Id.* (citing *Kay*, 500 F.3d at 1218).

### 4. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). "An equal protection claim may challenge legislation or the conduct of an individual." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (citation omitted). The claim "may be asserted with respect to a group or a 'class of one.'" *Id.* (citation omitted). "The former is more common and concerns a 'governmental classification[ ] that affect[s] some groups of citizens differently than others.'" *Id.* (citations omitted). Plaintiff alleges that hearing-impaired inmates are treated differently than other inmates.

### 5. Defendants

Plaintiff alleges that Defendants Howes, KDOC, and Centurion "are legally responsible for the faults and misconduct of their employees under the appropriate officials theory or the doctrine of respondeat superior," and are "vicariously liable due to the [alleged Eighth Amendment violations] of Defendants[] Heald[] and[] Gunderson." (Doc. 1–1, at 3.)

However, an essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985); *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011) ("But § 1983 imposes liability for a defendant's own actions—personal participation in the specific constitutional violation complained of is essential.") (citing *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (citation omitted)); *Trujillo v. Williams*, 465 F.3d 1210, 1228 (10th Cir. 2006) ("In order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation . . . must be established.") (emphasis added) (citation omitted)). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

Mere supervisory status is insufficient to create personal liability. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (supervisor status is not sufficient to create § 1983

liability).   An official's liability may not be predicated solely upon a theory of respondeat superior.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).  A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011).  "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

Plaintiff alleges that Centurion has a policy of "incentivizing cost cutting measure[s] in the delivery of medical and mental health services."  (Doc. 1–1, at 7.)  In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell v. Department of Social Services*, 436 U.S. 658, 694 . . . (1978)." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted). A corporation may not be held liable based upon respondeat superior because "vicarious liability is inapplicable to  . . . § 1983 suits."  *Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Iqbal*, 556 U.S. at 676); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished); *Green v. Denning*, 465 F. App'x 804, 806 (10th Cir. 2012) (unpublished) ("An entity 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory.'") (citation omitted); *Williams v. Correct Care Sols.*, No. 19-3075-SAC, 2019 WL

2005920, at *2 (D. Kan. May 7, 2019); *Jefferson v. Aramark Corr. Servs.*, Case No. 17-3161-SAC, 2017 WL 6557419, at *2 (D. Kan. Dec. 22, 2017); *Livingston v. Correct Care Sols.*, Case No. 07-3256-SAC, 2008 WL 1808340, at *1–2 (D. Kan. Apr. 17, 2008) (stating that "[a] policy is a formal statement by the private corporation" and "[a] custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation."). Plaintiff's allegation that the relevant policy is Centurion's cost-cutting measures fails to show the type of policy warranting imposition of liability. Plaintiff has failed to allege a formal statement by the company or a persistent, well-settled practice.

Plaintiff also claims that Warden Howes denied his grievance. (Doc. 1–1, at 3.) The Tenth Circuit has held that the denial of administrative grievances alone is insufficient to establish personal participation. *See Stewart v. Beach,* 701 F.3d 1322, 1328 (10th Cir. 2012) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)); *Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007) (unpublished).

Plaintiff names the KDOC as a defendant. "A party's capacity to sue or be sued in federal court is determined by state law." *Sims v. Kansas Dep't of Corr.*, 2019 WL 4450671, at *4 (D. Kan. Sept. 17, 2019) (citation omitted). "Under Kansas law, absent express statutory authority, legislatively-created government agencies lack the capacity to sue or be sued." *Id.* (citation omitted). "The KDOC is a legislatively-created government agency, and Kansas law does not permit it to sue or be sued." *Id.* (citing K.S.A. § 75-5203). Furthermore, as an agency of the State, the KDOC has absolute immunity under the Eleventh Amendment to a suit for money damages. *See McGee v. Corizon,* 831 F. App'x 381, (10th Cir. Oct. 14, 2020) (unpublished) ("As to the Kansas Department of Corrections, the Eleventh Amendment bars McGee's claim. It is well-recognized that an action cannot be brought in federal court against a

state or its agencies.") (citation omitted); *see also Will v. Mich. Dep't of State Police*, 491 U.S.

58, 71 (1989) (holding that "neither a State, nor its officials acting in their official capacities are

'persons' under § 1983"). Plaintiff's claims against the KDOC are subject to dismissal. Because

Plaintiff has neither made a specific claim against the KDOC nor shown any waiver of immunity

from suit, he must show good cause why this defendant should not be dismissed from this action.

Plaintiff should also show good cause why his claims against Centurion, Warden Howes,

and Jeff Zmuda, should not be dismissed for failure to allege personal participation or the

requisite custom or policy to hold Centurion liable.

## IV. Motion for TRO/PI

Plaintiff has filed a Motion for Ex Parte Temporary Restraining Order (Doc. 3). Plaintiff

seeks a TRO and an order directing Defendant Warden Howes to show cause why a preliminary

injunction should not issue. Plaintiff seeks a preliminary injunction requiring Defendants to

provide Plaintiff with: 1) a sign language interpreter for the college program and Substance

Abuse Drug Treatment Program; and 2) access to a teletypewriter ("TTY") phone system or

other accessible telephone equipment that is equal to that of non-hearing impaired inmates.

(Doc. 3, at 3.) Plaintiff also seeks an order requiring a staffing analysis and requiring the KDOC

and Centurion to show improvement in the quality and quantity of contracted medical personnel

and/or the implementation of a recruitment program. *Id*. at 4.

The Court denies Plaintiff's request for an ex parte TRO. Rule 65 provides that a TRO

may be issued without notice to the adverse party only if: "(A) specific facts in an affidavit or a

verified complaint clearly show that immediate and irreparable injury, loss, or damage will result

to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney

certifies in writing any efforts made to give notice and the reasons why it should not be

required." Fed. R. Civ. P. 65(b)(1). Plaintiff has not met the requirements of Rule 65(b)(1). However, the Court will direct the KDOC, as Interested Party, to respond to Plaintiff's motion for a preliminary injunction.

## V. Conclusion

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate KDOC officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate KDOC officials to prepare and file a *Martinez* Report. Once the Report has been received, the Court can properly screen Plaintiff's Complaint under 28 U.S.C. § 1915A.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **February 3, 2025,** in which to show good cause, in writing to the undersigned, why Plaintiff's claims against Defendants KDOC, Centurion, Zmuda, and Howes, should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that:

(1)    The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report by **February 28, 2025.** Upon the filing of that Report, the Court will screen Plaintiff's Complaint. If the Complaint survives screening, the Court will enter a separate order serving Defendants and setting an answer deadline.

(2)    KDOC officials are directed to undertake a review of the subject matter of the Complaint:

a. To ascertain the facts and circumstances;

b. To consider whether any action can and should be taken by the institution to

resolve the subject matter of the Complaint; and

    c.  To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(3)    Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff.  If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s).  The KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4)    Statements of all witnesses shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(5)    Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6)    No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7)    Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the KDOC shall respond to Plaintiff's request for a preliminary injunction at Doc. 3 by **February 28, 2025.**

13

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, the KDOC may move for termination from this action.

Copies of this order shall be transmitted to Plaintiff, counsel for the KDOC, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED**.

**Dated January 3, 2025, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**