# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**BRADEN HICKERT,**

     **Plaintiff,**

     v.                         **CASE NO. 24-3229-JWL**

**KANSAS DEPARTMENT OF
CORRECTIONS, et al.,**

     **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff, Braden Hickert, brings this pro se civil rights case under 42 U.S.C. § 1983. At the time of filing, Plaintiff was incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF"). The Court granted Plaintiff leave to proceed in forma pauperis. On January 3, 2025, the Court entered a Memorandum and Order (Doc. 5) ("M&O") ordering Plaintiff to show good cause why his claims against Defendants KDOC, Centurion, Zmuda, and Howes, should not be dismissed. The Court also found that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate Kansas Department of Corrections ("KDOC") officials and ordered a *Martinez* Report. The *Martinez* Report (Doc. 13) (the "Report") has now been filed. The M&O provides that "[o]nce the Report has been received, the Court can properly screen Plaintiff's Complaint under 28 U.S.C. § 1915A." (Doc. 5, at 12.) The Court's screening standards are set forth in the Court's M&O.

## I. Nature of the Matter before the Court

Plaintiff alleges that he is deaf or significantly hearing impaired. (Doc. 1, at 2; Doc. 1–1, at 1.) Plaintiff communicates almost exclusively through American Sign Language. (Doc. 1–1, at 4.) He alleges that Centurion and the KDOC failed to train staff regarding offenders with

hearing impairments, were deliberately indifferent to his medical needs, and failed to comply with the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA").[1] (Doc. 1, at 3.)  Plaintiff also alleges an equal protection violation.  *Id*. at 4.  Plaintiff alleges that Centurion denied him hearing aids, despite an outside audiologist's recommendation to the contrary.  (Doc. 1–1, at 2.)

Plaintiff alleges that his claims center around five areas:  1) inadequate access to telecommunications; 2) inadequate access to auxiliary aids and services which consequently impede his religious exercise under the First Amendment; 3) inadequate visual notification of prison alerts and announcements; 4) ineffective communication with family and counsel and ineffective communication during parole and disciplinary proceedings; and 5) unequal treatment of deaf and hearing impaired inmates by prison officers.  *Id*. at 2; Doc. 1–1, at 4.

Plaintiff names as defendants:  the KDOC; Jeff Zmuda, KDOC Secretary of Corrections; Jesse Howes, LCF Warden; Centurion, LLC; John Doe (1), Deputy Warden; John Doe (2), Deputy Director; John Doe (3), Chief Deputy Director; Madison Gonsesth, Public Information Officer; Kevin Goodman, Sergeant/Correctional Officer 1; Tracy Gunderson, Health Services Administrator; and Stacy Heald, Director of Nursing.  For relief, Plaintiff seeks compensatory and punitive damages, a declaratory judgment, and an order compelling Defendants to provide Plaintiff with appropriate reasonable accommodations and compelling Defendants to enact policies ensuring hearing impaired inmates receive reasonable accommodations.  *Id*. at 5.

## II.  The Report

The Report provides that Plaintiff "is presently housed at the Ellsworth Correctional Facility (ECF) to where he was transferred on January 28, 2025."  (Doc. 13, at 2.)  The Report

---

[1]  Plaintiff also references RLUIPA and free speech in his complaint that is attached to his Complaint on the Court-approved form.  (Doc. 1–1, at 2.)  Plaintiff does not elaborate on these claims or mention them in his Complaint at Doc. 1.

further provides that:

> Correction Officer I, Kevin Goodman (Goodman, CO I), was one of the supervising correctional officers in Plaintiff's cell house (aka pod) and had previously interacted with Plaintiff. (Exhibit 4, ¶ 7–9). Goodman, CO I, recalled having interacted with Plaintiff and corresponding with Plaintiff via written communications on a legal note pad having explained the process for receiving ADA accommodations through the medical clinic. (Id., ¶ 9). He no longer has communications with Plaintiff due to plaintiff's transfer to ECF. (Id., ¶ 11).

> LCF Warden Jesse Howes provided in his affidavit information that Mr. Hickert had access to a tablet for which he could use to communicate with friends and family, that LCF provides religious services through its chaplain, that Mr. Hickert could access medical care and treatment to obtain ADA accommodation during his time there. (Exhibit 7, ¶ 8–12).

> LCF Chaplain, Melissa Kamphefner, provided in her affidavit that she has been providing chaplain services at LCF since 2023 and that during that time she did not recall Mr. Hickert attending any services provided through her. (Exhibit 6, ¶ 4–9). She does recall having helped him with documentation and having used conversational sign language with him as she has some ability to communicate in that way and believing that she could have provided further assistance for him had he asked. (Id.).

> Kansas Department of Corrections Eastern Region Civil Rights Manager, Marcelle Cappel-Chmidling, testified via her signed affidavit that Mr. Hickert nor anyone on his behalf filed any grievances or complaints to her, upper administration of the correctional facilities, or the Secretary of Corrections. (Exhibit 2, ¶ 8–12). As part of her duties, Ms. Cappel-Chmidling, investigated Mr. Hickert's need for ADA assistance. (Id.) She found that Mr. Hickert is diabetic and receives medical treatment for his daily insulin. (Id., ¶ 13). Ms. Cappel-Chmidling details that Mr. Hickert's treatment for his hearing appears to have started on or about May 2024 basically upon entry into corrections but then ran into a series of delays when he failed to appear for subsequent appointments. (Id., ¶ 14–16). Then his treatment appears to get back on track in October 2024, were [sic] he is rescheduled to be seen by KUMC and soon approved for the Cochlear hearing aid. (Id., ¶ 15–16). Then there is another gap in his receipt of the device while waiting for a quote from KUMC for the device which was then approved all in the month of December 2024. (Id., ¶ 17).

> It was determined that Mr. Hickert received his Cochlear Implant on or about January 15, 2025. (Id., ¶ 18). This occurred before he was transferred to ECF, it was learned that he was

moved to ECF after he had voiced his concerns about other residents being mean to him and having issues with being at a large facility. (Id., ¶ 19, with reference to Exhibit 1). This is what resulted in his transfer to ECF as it meets the needs he was asking for. (Id.). This is further substantiated through the affidavit of Level 2 Corrections Manger Lindsey Wildermuth. (Exhibit 5, ¶ 8–11).

Another aspect of Ms. Cappel-Chmidling's investigation involved the teletype writer phone systems (TTY) that were mentioned in Mr. Hickert's complaint. (Id., ¶ 20–22). In her affidavit, Ms. Cappel-Chmidling details the issues LCF has had with CoreCivic in making the TTY system functional as well as detailing Mr. Hickert's success in using the TTY system at ECF. (Id.). Other communications where [sic] also investigated by Ms. Cappel-Chmidling, resulting in an understating that Mr. Hickert had a KDOC tablet issued to him while at LCF what he should have used text to type communications to persons on his approval call list for which he had been successfully using during the entirety of his incarceration as well as other accommodations he has now (noting that Mr. Hickert had sent and/or received at least 951 messages between May 16, 2024 to February 14, 2025). (Id, ¶ 23–29). The affidavit of Erika Davis outlines the current accommodations and living situation for Mr. Hickert, information of which indicate that his needs for accommodation for his hearing disability appear to be getting met. (Exhibit 8, ¶ 7–12).

Turning to medical care received and ADA accommodations, the affidavits of former Health Services Administrator at LCF, Tracy Gunderson, and former Director of Nursing at LCF, Stacy Heald, were received. Both affidavits from the former Centurion employees are nearly the same so much of the information provided is identical. Both state that Mr. Hickert had been receiving treatment upon the start of his incarceration. (Exhibits 9 and 10, ¶ 7). They state that during this time Mr. Hickert was assessed as and found deaf on or about May 18, 2024, and a patient plan was put into place to request a replacement of the hearing [sic] he had broken prior to coming to KDOC. (Id., ¶ 8). Upon the review of Mr. Hickert's medical records, they determined that he had been scheduled for an onsite audiology evolution for June 6, 2024, but after that appointment further testing was still needed. (Id., ¶ 10). Then they detail how Mr. Hickert was advised of having to get further testing by an Otolaryngologist (ENT) for further approval, which is said to have upset Mr. Hickert. (Id., ¶ 11). This appointment was stated to have been scheduled for July 19, 2024, but Mr. Hickert failed to appear. (Id., ¶ 12).

In conjunction with their statements in the affidavits, the medical records show Mr. Hickert failed to appear for that date as well as August 16, 2024, and September 17, 2024. (Id., ¶ 12–14). Similarly to the affidavit of Ms. Cappell-Chmidling, both Ms. Held and Ms. Gunderson outline the series of steps that were gone through to get the hearing device eventually place in January 2025. (Id. ¶ 15–20, referencing Exhibit 2). Both Ms. Heald and Ms. Gunderson state in their affidavits that Mr. Hickert can effectively communicate via pen and paper and that his medical needs were not diminished by this method of communication. (Id., ¶ 21–22).

(Doc. 13, at 4–7.)

The Report also provides that Plaintiff has not fully exhausted his administrative remedies by continuing the grievance process to the level of the Warden or the Secretary of Corrections. *Id*. at 7–8. The Report also shows that Plaintiff received his Cochlear Hearing Implant shortly after filing this case, and that gaps in his treatment are "due to what appears to be his own failure to appear for appointments." *Id*. at 11. The Report also suggests that Plaintiff's current living arrangement appears to meet his needs regarding his disability. *Id*.

## III. DISCUSSION

### 1. Order to Show Cause and Response

The Court ordered Plaintiff to show good cause why his claims against Defendants KDOC, Centurion, Zmuda, and Howes, should not be dismissed for the reasons set forth in the M&O. Plaintiff has filed a response (Doc. 6), alleging that his claims were based on a policy created, promulgated, or implemented by these defendants. (Doc. 6, at 1.) Plaintiff alleges that the KDOC's decision to contract with Centurion is a policy "because it is a ratification of Centurion's dangerous inadequate system." *Id*. at 10. Plaintiff alleges that the Secretary was on notice that Centurion is failing to provide needed medical care to inmates. *Id*. at 5. Plaintiff alleges that Secretary Zmuda promulgated or enforced an "alleged policy to reduce cost of the [Plaintiff's] plea for medical care." *Id*.

Plaintiff alleges that Centurion failed to properly train its medical staff, and has an informal custom of incentivizing reductions in off-site care through financial provisions in its contract with the KDOC. *Id*. at 9–10. Plaintiff alleges that staff were inadequately trained to accommodate, understand, and communicate with hearing-impaired offenders. *Id*. at 3.

Although Plaintiff has not provided the Court with a change of address, he states in his response that his transfer from LCF to ECF shows that LCF was unable to provide even limited accommodations. *Id*. at 7. Plaintiff also alleges that Warden Howes and Secretary Zmuda failed to timely respond to his grievances. *Id*. at 8.

A plaintiff alleging supervisory liability must show "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010), *cert. denied*, 563 U.S. 960 (2011). "[T]he factors necessary to establish a [supervisor's] § 1983 violation depend upon the constitutional provision at issue, including the state of mind required to establish a violation of that provision." *Id*. at 1204 (citing *Iqbal*, 129 S. Ct. at 1949).

Plaintiff alleges that Centurion has a policy of "incentivizing cost cutting measure[s] in the delivery of medical and mental health services." (Doc. 1–1, at 7.) In the Tenth Circuit, "to hold a corporation liable under § 1983 for employee misconduct, a plaintiff must demonstrate the existence of the same sort of custom or policy that permits imposition of liability against municipalities under *Monell v. Department of Social Services*, 436 U.S. 658, 694 . . . (1978)." *Wishneski v. Andrade*, 572 F. App'x 563, 567 (10th Cir. 2014) (unpublished) (citations omitted). A corporation may not be held liable based upon respondeat superior because "vicarious liability

is inapplicable to . . . § 1983 suits." *Rascón v. Douglas*, 718 F. App'x 587, 589–90 (10th Cir. 2017) (unpublished) (quoting *Iqbal*, 556 U.S. at 676); *see also Spurlock v. Townes*, 661 F. App'x 536, 545 (10th Cir. 2016) (unpublished); *Green v. Denning*, 465 F. App'x 804, 806 (10th Cir. 2012) (unpublished) ("An entity 'cannot be held liable *solely* because it employs a tortfeasor—or, in other words, [it] cannot be held liable under § 1983 on a respondeat superior theory.'") (citation omitted); *Williams v. Correct Care Sols.*, No. 19-3075-SAC, 2019 WL 2005920, at *2 (D. Kan. May 7, 2019); *Jefferson v. Aramark Corr. Servs.*, Case No. 17-3161-SAC, 2017 WL 6557419, at *2 (D. Kan. Dec. 22, 2017); *Livingston v. Correct Care Sols.*, Case No. 07-3256-SAC, 2008 WL 1808340, at *1–2 (D. Kan. Apr. 17, 2008) (stating that "[a] policy is a formal statement by the private corporation" and "[a] custom is a persistent, well-settled practice of unconstitutional misconduct by employees that is known and approved by the corporation."). Plaintiff's allegation that the relevant policy is Centurion's cost-cutting measures fails to show the type of policy warranting imposition of liability. Plaintiff has failed to allege a formal statement by the company or a persistent, well-settled practice.

Plaintiff has also failed to show a failure to train. "[T]he Supreme Court has held that in 'limited circumstances,' a failure to train can be the basis for liability under § 1983." *Horocofsky v. City of Lawrence*, 2022 WL 1421554, at *29 (D. Kan. May 5, 2022) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)). Only when a failure to train employees evidences a " 'deliberate indifference' to the rights of inhabitants" can a failure to train be considered "a city 'policy or custom' that is actionable under § 1983." *Id.* (quoting *Canton*, 489 U.S. at 389). To show deliberate indifference, a plaintiff must show that the municipality had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation," and a conscious or deliberate choice to disregard the harm. *Id.*

(citation omitted).

Plaintiff also claims that Warden Howes denied his grievance. (Doc. 1–1, at 3.) The Tenth Circuit has held that the denial of administrative grievances alone is insufficient to establish personal participation. *See Stewart v. Beach,* 701 F.3d 1322, 1328 (10th Cir. 2012) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)); *Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir. 2007) (unpublished).

Plaintiff names the KDOC as a defendant. "A party's capacity to sue or be sued in federal court is determined by state law." *Sims v. Kansas Dep't of Corr.*, 2019 WL 4450671, at *4 (D. Kan. Sept. 17, 2019) (citation omitted). "Under Kansas law, absent express statutory authority, legislatively-created government agencies lack the capacity to sue or be sued." *Id*. (citation omitted). "The KDOC is a legislatively-created government agency, and Kansas law does not permit it to sue or be sued." *Id*. (citing K.S.A. § 75-5203). Furthermore, as an agency of the State, the KDOC has absolute immunity under the Eleventh Amendment to a suit for money damages. *See McGee v. Corizon,* 831 F. App'x 381, (10th Cir. Oct. 14, 2020) (unpublished) ("As to the Kansas Department of Corrections, the Eleventh Amendment bars McGee's claim. It is well-recognized that an action cannot be brought in federal court against a state or its agencies.") (citation omitted); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State, nor its officials acting in their official capacities are 'persons' under § 1983").

Plaintiff has failed to show good cause why his claims against Centurion, Warden Howes, and Jeff Zmuda, should not be dismissed for the reasons set forth in the Court's M&O. Therefore, the Court dismisses these claims.

### 2. Motion for Ex Parte Temporary Restraining Order and Preliminary Injunction

Plaintiff has filed a motion seeking a temporary restraining order and an order to show cause why a preliminary injunction should not be issued. (Doc. 3, at 1.) Plaintiff seeks an injunction requiring Defendants to provide Plaintiff with "(1) a sign language interpreter for the college program and Substance Abuse Drug treatment program; and (2) access to a teletypewriter ("TTY") phone system or other accessible telephone equipment that is equal to that which non-hearing impaired inmates have . . . pending final decision on the merits." *Id*. at 3. Plaintiff also seeks: access to videophone service and notice of a plan to provide it; a requirement that the KDOC conduct a staffing analysis to address staff retention/turnover/hiring issues and a proper staffing ratio; and an order directing the KDOC and Centurion to show improvement in the quality and quantity of contracted medical personnel or a recruitment program sufficient to fill vacancies. *Id*. at 4.

"The [C]ourt may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1).

"Except as to notice and duration, the legal standards governing a temporary restraining order ("TRO") and a preliminary injunction are the same." *Vietti v. Welsh & McGough, PLLC*, 2022 WL 1288314, at *2 (N.D. Okla. April 30, 2022) (citing *People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) ("The requirements for a TRO issuance are essentially the same as those for a preliminary injunction order.")). "The

primary difference between a TRO and a preliminary injunction is that a TRO may issue without notice to the opposing party and that a TRO is of limited duration." *Id.* (citing Fed. R. Civ. P. 65(b)).

A party seeking preliminary injunctive relief must establish "(1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest." *Derma Pen, LLC v. 4EverYoung Ltd.*, 737 F. App'x 396, 402 (10th Cir. 2018) (unpublished) (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001)). Whether sought through a TRO or a preliminary injunction, injunctive relief is an "extraordinary remedy," and the movant must demonstrate a "clear and unequivocal right" to have its request granted. *Vietti*, 2022 WL 1288314, at *2 (citing *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). A mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally

entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a TRO or preliminary injunction is warranted. Based on the Report, Plaintiff has been moved to a different facility and has been provided with a cochlear implant and a TTY system. Plaintiff's motion is denied without prejudice to refiling if his Complaint survives screening.

## IV.  Response Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims."   *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987).  The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)).  Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact.  *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").

The Report provides that Plaintiff has not fully exhausted his administrative remedies by continuing the grievance process to the level of the Warden or the Secretary of Corrections.  The Report also shows that Plaintiff received his Cochlear Hearing Implant shortly after filing this case, and that gaps in his treatment are due to what appears to be his own failure to appear for appointments.  The Report also provides that Plaintiff is currently successfully using the TTY system at ECF and he had a KDOC tablet while housed at LCF that allowed him to communicate

with people on his approved call list.  The Report also suggests that Plaintiff's current living arrangement appears to meet his needs regarding his disability.  *Id.*

In light of the Report, the Court is considering dismissal of this matter for failure to state a claim.  Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered for the reasons stated herein.  Failure to respond by the Court's deadline may result in dismissal of this action without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** Plaintiff's motion for temporary restraining order or preliminary injunction (Doc. 3) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants KDOC, Centurion, Zmuda, and Howes, are **dismissed.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **June 5, 2025,** in which to respond to the Report at Doc. 13, and to show good cause, in writing to the undersigned, why Plaintiff's claims should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that the Clerk is directed to change Plaintiff's address of record to the Ellsworth Correctional Facility.

**IT IS SO ORDERED**.

**Dated May 6, 2025, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**